**SEYFARTH SHAW LLP**
620 Eighth Avenue
New York, New York 10018-1405
(212) 218-5500

Attorneys for Plaintiffs
Better Holdco, Inc. and Better Mortgage Corp.

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

BETTER HOLDCO, INC. and BETTER      :     ___-CV-_____ (___)
MORTGAGE CORP.,                     :
                                       :
             Plaintiff,         :
                                         :     **COMPLAINT**
       v.                           :
                                         :
MICHAEL DROB,                    :
                                         :
               Defendant.       :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

       Plaintiffs Better Holdco, Inc. ("Better Holdco") and Better Mortgage Corp. ("Better Mortgage" and together with Better Holdco, "Better"), by and through their undersigned attorneys, Seyfarth Shaw LLP, as and for their Complaint against Defendant Michael Drob, alleges as follows:

<u>**NATURE OF THE ACTION**</u>

       1.      Better, a leading mortgage loan originator, brings this action for injunctive relief and damages arising from its employee Drob's blatant theft of all of Better's source code including the source code underlying Better's proprietary software platform known as Tinman, and Better's website. Specifically, on April 27, 2022, Drob, who had signed separation papers that day terminating his employment as a software engineer with Better, surreptitiously downloaded to his personal drive Better's entire code repository (the "Source Code"). This

included, among other things, the source code for Tinman, a technology platform developed from scratch over many years by Better, upon which its business.

2.      Upon learning of the theft, Better immediately confronted Drob and demanded return of the Source Code. Drob denied downloading anything to his personal drive other than personal files, and shared his screen over Zoom, showing his personal drive to indicate that he was not in possession of the Source Code.

3.      A subsequent investigation revealed, however, that immediately after downloading the Source Code, Drob changed the file name, saved it to his personal iCloud, then deleted the file from his local hard drive.  Despite confronting Drob for a second time with this irrefutable evidence, Drob continued to deny his theft of the source code.

4.      Drob's actions as described herein are in violation of the Defend Trade Secrets Act, 18 U.S.C. § 1832, the At-Will Employment Confidential Information Invention Assignment and Arbitration Agreement (the "Confidential Information Agreement") that he signed on April 23, 2021 as a condition of his employment with Better, the company's policies as reflected in Better's Employee Handbook (the "Handbook"), and his fiduciary duties to Better, among other common law obligations.

5.      With this action, Better seeks injunctive relief, compensatory and punitive damages against Drob arising from his misconduct, and specific performance that Drob be ordered to return the stolen source code to Better.

6.      Absent injunctive relief, Better faces irreparable injury, including the loss of its proprietary source code that Better spent millions of dollars developing over the course of many years, in amounts which may be impossible to determine unless Drob is enjoined and restrained by order of this Court.

## THE PARTIES

7.      Better Holdco is a Delaware corporation with its principal place of business located in New York, New York.

8.      Better Mortgage is a California corporation with its principal place of business located in New York, New York.

9.      Upon information and belief, Drob is a citizen of the State of New Jersey.

## JURISDICTION AND VENUE

10.     This Court has original jurisdiction over this action under 28 U.S.C. § 1332 because the parties are citizens of different states and the matter in controversy exceeds $75,000.00 excluding interest and costs.

11.     This Court also has original subject matter jurisdiction under 28 U.S.C. § 1331, because this action involves a claim arising under the Defend Trade Secrets Act of 2016, 18 U.S.C. § 1832, et seq., and supplemental jurisdiction under 28 U.S.C. § 1367 because all other claims are so related that they form part of the same case or controversy.

12.     This Court has personal jurisdiction over Drob, and venue is proper in this District by reason of his execution of the Confidential Information Agreement, in which he consented to the jurisdiction of the state and federal courts located within the Southern District of New York.

13.     Moreover, general and specific jurisdiction exist against Drob based on his contacts with this jurisdiction, the fact that he conducts business in New York, committed tortious acts against Better in New York, and/or caused harm to Better in New York.

## ALLEGATIONS COMMON TO ALL COUNTS

### Better's Business and Proprietary Systems

14.     Better is a home mortgage originator that is licensed to provide home loans to Americans in dozens of states and the District of Columbia.  Better works to provide faster, simpler, and more accessible tools for home ownership in the highly competitive mortgage business.

15.     Better accomplishes this goal, and provides this valuable customer service, through the use of proprietary technology, including the use of an online mortgage origination system that is based on a proprietary workflow engine known as "Tinman."

16.     Tinman automates tasks to streamline the customer journey and breaks down specialized, human-generated tasks into simple, machine-driven tasks to improve labor liquidity, avoid human error, and lower overall labor costs.  As more processes are automated, each loan requires fewer labor hours to complete.  Better's average funded loan now features numerous fully automated activities.  As such, Tinman enables industry-leading productivity and provides Better with a massive labor cost advantage.

17.     Better built Tinman from scratch, at substantial expense, to serve as the backbone of Better's business and to facilitate its goal of providing a better, faster, and cheaper customer experience during the mortgage origination process.  Better is continuing to invest in Tinman through extensive R&D efforts, with the goal of further reducing mortgage origination costs, so that it can pass savings along to the customer, win market share, and take advantage of economies of scale and efficiencies.

18.     Better's software engineers have access to the Source Code on a dual-factor protected basis.

19.     As described above, Tinman is the lifeblood of Better's business.  In the highly competitive mortgage origination business, any competitors who gained access to the Source Code for Tinman would gain a huge advantage without investing the years and millions of dollars Better has devoted to developing Tinman.

20.     Any such competitor would have an unfair competitive advantage. That is because a competitor would, among other things, have the benefit of proprietary information at no cost that took Better years and millions of dollars to develop.

**Better's Measures to Protect Tinman**

21.     Given the paramount importance of Tinman to Better and its business, Better takes a number of steps to maintain the confidentiality of Tinman and its underlying Source Code.

22.     These measures include: (i) making all employees subject to the confidentiality provisions of Better's Employee Handbook (the "Handbook"); (ii) making all employees subject to an At-Will Employment, Confidential Information, Invention Assignment and Arbitration Agreement (the "Confidential Information Agreement"); (iii) limiting access to its source code repository by requiring verification of a user's identity, log-in credentials, and employment at Better, and (iv) using third-party software to notify Better's Information Security ("InfoSec") team of questionable activities including the download of files from the corporate network.

**The Handbook**

23.     All Better employees are subject to the Handbook, which contains numerous provisions that require employees to maintain the confidentiality of Better's Confidential Information.

24.     In the Handbook, Better identifies certain of its confidential and proprietary information.     In Section 6.3(A), the first item listed by Better as an example of its "Confidential/Proprietary Data" is "Tinman source code."

25.     Section 6.10 of the Handbook provides that, "[w]ithout the advanced written approval of the user's manager and Better Security, use of portable drives or cloud services that are not under the Company's control, for instance, to download/upload Company information for any purposes other than Company business, is prohibited."

26.     Section 6.10 further provides that "[u]sers may not, without authorization, transmit, retrieve, or store confidential company information on their personal systems (email systems, personal drives, personal cloud services, etc.)."

27.     Section 6.11 of the Handbook broadly requires Better employees to maintain the confidentiality of Confidential Information.

28.     Numerous other sections of the Handbook contain similar restrictions concerning the use of Better Confidential Information including Sections 2.4, 5.1, 5.6, 6.3, 6.6, 6.7, 6.11, 6.13, 6.18, 6.20.

**The Confidential Information Agreement**

29.     In addition to the Handbook, all Better employees are required to enter into a Confidential Information Agreement pursuant to which all employees agree to maintain the confidentiality of Better's confidential information, which includes its source code.

30.     In Paragraph 2, the Confidential Information Agreement defines the "Confidential Information" of Better as:

> information (including any and all combinations of individual items of information) that the Company Group has or will develop, acquire, create, compile, discover or own, that has value in or to the Company Group's business which is not generally known and which the Company Group wishes to maintain

as confidential. Company Confidential Information includes both information disclosed by the Company Group to me, and information developed or learned by me during the course of my employment with the Company, and unauthorized disclosure of which could be detrimental to the interests of the Company Group. By example, and without limitation, Company Confidential Information includes any and all non-public information that relates to the actual or anticipated business and/or products, research or development of the Company Group, or to the Company Group's technical data, trade secrets, or know-how, including, but not limited to, research, product plans, or other information regarding the Company Group's products or services and markets therefor, customer lists and customers (including, but not limited to, customers of the Company Group on which I called or with which I may become acquainted during the term of my employment), software, developments, inventions, discoveries, ideas, processes, formulas, technology, designs, drawings, engineering, hardware configuration information, marketing, finances, and other business information disclosed by the Company Group either directly or indirectly in writing, orally or by drawings or inspection of premises, parts, equipment, or other Company Group property.

31.     Paragraph 2 of the Confidential Information Agreement contains the employee's agreement not to disclose or use any Confidential Information other than in the performance of the employee's duties as an employee of Better, both during and after employment.

32.     Paragraph 6 of the Confidential Information Agreement provides that:

upon separation from employment with the Company or upon the Company's request at any other time, I will immediately deliver to the Company, and will not keep in my possession, recreate, or deliver to anyone else, any and all Company property, including, but not limited to, Company Confidential Information (including third party confidential information), all Company equipment including all Company computers, external storage devices, thumb drives, mobile devices and other electronic media devices ("Electronic Media Equipment"), all tangible embodiments of the Inventions, all electronically stored information and passwords to access such information, Company credit cards, records, data, notes, notebooks, reports, files, proposals, lists, correspondence, specifications, drawings, blueprints, sketches, materials, photographs, charts, any other documents and property. I understand that I may keep a copy of the Company's employee handbook and personnel records relating to my employment.

In connection with my obligation to return information to the Company, I agree that I will not copy, delete, or alter any information, including personal information voluntarily created or stored, contained in Company Electronic Media Equipment before I return the information to the Company.

33.     It also provides that:

if I have used any personal Electronic Media Equipment or personal computer servers, messaging and email systems or accounts, applications for computers or mobile devices, and web-based services ("Electronic Media Systems") to create, receive, store, review, prepare or transmit any Company information, including, but not limited to, Company Confidential Information, I agree to make a prompt and reasonable search for such information in good faith, including reviewing any personal Electronic Media Equipment or personal Electronic Media Systems to locate such information and, if I locate such information, I agree to notify the Company of that fact and then provide the Company with a computer-useable copy of all such Company information from those equipment and systems. I agree to cooperate reasonably with the Company to verify that the necessary copying is completed (including upon request providing a sworn declaration confirming the return of property and deletion of information), and, upon confirmation of compliance by the Company, I agree to delete and expunge all Company information.

34.     Paragraph 6 further states:

I have no expectation of privacy in Company property, and I agree that any Company property is subject to inspection by Company Group personnel at any time with or without further notice. As to any personal Electronic Media Equipment or personal Electronic Media Systems that I have used for Company purposes, I agree that the Company, at its sole discretion, may have reasonable access, as determined by the Company in good faith, to such personal Electronic Media Equipment or personal Electronic Media Systems to review, retrieve, destroy, or ensure the permanent deletion of Company information from such equipment or systems or to take such other actions necessary to protect the Company Group or Company property, as determined by the Company Group reasonably and in good faith. I also consent to an exit interview and an audit to confirm my compliance with this section, and I will certify in writing that I have complied with the requirements of this section.

35.     Article 7 of the Confidential Information Agreement is titled "Termination Obligations." It provides:

Upon separation from employment with the Company, I agree to: (i) immediately update all of my social media accounts, including but not limited to Facebook, LinkedIn, Instagram, and Twitter, to delete any information, assertions, or suggestions to the effect that I am a current employee of the Company or am otherwise currently affiliated with the Company in any way; (ii) immediately sign and deliver to the Company the "**Termination Certification**" attached hereto as Exhibit B; and, (iii) upon the Company's request, participate in good faith in an exit interview with the Company.

### Drob's Employment With Better

36.     From November 17, 2020 through April 29, 2022, Drob was a Senior Software Engineer with Better.

37.     In that capacity, he had responsibility for ensuring that tools and resources are created to help deliver the software to production, help build a system, help create a system to help expedite the loan file to go through the loan process, create more micro service testing, improve CI pipelines, strategize to triage any potential risks within the software, and monitor, observe, and alert partners should any repairs, uptimes, and times to detect occur.

38.     Drob was very highly compensated, with base a salary of $210,000, in addition to other substantial incentives.

39.     As a condition of his employment, Drob was subject to the Handbook, and agreed to and executed the Confidential Information Agreement.

### Drob Steals Better's Source Code

40.     In early 2022, Drob notified Better that he was accepting voluntary severance pursuant to Better's voluntary severance program.

41.     Drob's final day of employment with Better was scheduled for Wednesday, April 27, 2022.

42.     At approximately 11:58 a.m. on April 27, 2022, Drob executed a Separation and General Release Agreement (the "Separation Agreement").

43.     In Section 12(D) of the Separation agreement, Drob acknowledged that he continued to be bound by the Confidential Information Agreement.

44.     In Section 14, Drob agreed to return all company property, and that he would not retain any copies of any such property.

45.     At approximately 1:00 p.m., Better's InfoSec team alerted Better that at approximately 10:30 a.m., Drob had downloaded Better's entire code repository, *i.e.*, the entire Tinman Source Code, to a personal drive.

46.     At approximately 4:45 pm on April 27, 2022, Better employees Dominique Lambert and Vanessa Phung spoke with Drob by telephone to inquire about the download of the Source Code.

47.     Drob denied downloading the Source Code and stated that he had been updating code that morning and that if he downloaded anything, it was by accident. He then said he checked his personal drive and did not see any downloads. He stated definitively that he had not downloaded anything and that if he had done so, "It would have been really bad."

48.     Drob had no business reason to download the Source Code on April 27, 2022.

49.     April 27, 2022 was Drob's last day of work and he was not assigned *any* work on the code that day.

50.     Even if he had been working on Better's source code, Better software engineers rarely have a need to download the entire code repository. Generally, they need only download a portion of the code relevant to their work on a given day.

51.     Drob did not re-upload anything to the code repository after his download, which is what a coder would have done if he had contributed to the code that day.

52.     Drob also changed the name of the code repository file after he downloaded it. There was no business reason for him to change the name of the file.

53.     Drob never re-uploaded anything bearing the new file name to Better's system.

**Better's Investigation of Drob's Theft.**

54.      At approximately 10:30 a.m. on Wednesday, April 27, 2022, InfoSec received a an alert from its network monitoring system indicating that Drob had downloaded data from Better's" code repository.

55.      The download of the code repository data was suspect because April 27, 2022 was Drob's last day of work at Better.

56.      InfoSec alerted Better's Human Resources department and ITM Team to the questionable download.

57.      The ITM Team then began to investigate Drob's activities for the day based on the associated user name and computer name and were able to examine and review his computer activities using an industry recognized Data Loss Prevention (DLP) program that allows for the monitoring of user-based activity across Better owned endpoints connected to Better's network.

58.      The ITM investigation revealed that Drob (i) downloaded the Better source code repository at 10:24:15am to the local "Downloads" folder located on his Better issued laptop, (ii) changed the name of the Source Code file to "mm.zip" at 10:24:35am, (iii) moved the renamed file to the local "Documents" folder at 10:25:01am, which was linked to an iCloud account (improperly and in violation of Better's policies) and thus automatically uploaded the mm.zip file to the iCloud account, additionally the file was then copied to a "Backup" repository at 10:25:07am, and (v) then deleted the file from the local "Documents" folder at 10:26:54am.

59.      All activity took place within 2 minutes and 39 seconds on the morning of April 27th.

60.     Based on the ITM investigation, it was quite clear that Drob downloaded Better's code repository, saved it to his local machine, renamed it, uploaded it to an iCloud account, copied it to a backup repository, and then deleted the file from his local machine.

61.     The ITM investigation also revealed that before taking all of the steps described above, Drob conducted a Google search at 10:08:08am for "remove node-modules recursively" which refers to the method of removing all downloaded packages from a project. The user then followed the instructions on how to recursively remove the node-modules.  This is typically done before starting a new project, or making a backup of a current project, as it frees up hard drive space and prevents issues in re-importing the project if required.

**Better's Follow-Up Call With Drob**

62.     After ITM conducted its investigation, on April 29, 2022, at approximately 11 am, Lambert, Phung, and Damian Schwartz, Better's Director of Global Security & Investigations, conducted a Zoom with Drob.

63.     When the Zoom began, Drob was visible on camera.

64.     However, when Mr. Schwartz joined the Zoom, Drob turned off his camera and stated that his home computer did not have a camera.

65.     Phung presented Drob with a summary of the evidence that InfoSec had uncovered, including that he had renamed the source code repository file to "mm.zip."

66.     Drob responded, "Okay."

**Irreparable Harm to Better Without Injunctive Relief**

67.     Better's source code is the lifeblood of its business.  Anyone with access to Better's source code can replicate Better's groundbreaking Tinman system, take advantage of the

millions of dollars Better has invested in Tinman, and unfairly capitalize on Better's work to compete against Better.

68.     If a competitor gains access to Tinman, it could divert customers from Better and undermine Better's business.   That is why Better goes to such lengths to protect Tinman, its underlying source code, and all other Better Confidential Information.

69.     In short, Better will be irreparably harmed by the disclosure or publication of its source code by Drob.

## AS AND FOR A FIRST CAUSE OF ACTION
### (Misappropriation of Trade Secrets, 18 U.S.C. § 1832)

70.     Better repeats and re-alleges each and every allegation contained in the preceding paragraphs of the Complaint as if fully set forth herein.

71.     By virtue of his employment at Better and performance of responsibilities for Better, Drob was given access to and possessed trade secrets and confidential and proprietary information of Better, to wit, the Source Code.

72.     The Source Code was developed by Better at great time, cost, and expense to Better, and is maintained on password protected computer networks accessible only by Better employees with need to use information on Better's behalf.

73.     Better derives independent economic value from the Source Code entrusted to Drob by Better; such information is not generally known or readily ascertainable by proper means by other persons who can obtain economic value from its disclosure and use, and the information is the subject of significant efforts to maintain its secrecy.

74.     Such information is considered a trade secret under the Federal Defend Trade Secrets Act of 2016 ("DTSA"), 18 U.S.C. § 1832 *et seq.*, because Better derives independent economic value from this information not being generally known to the public, the information is

not readily ascertainable by proper means by persons who could obtain economic value from its disclosure or use, and the information is the subject of reasonable efforts to maintain its secrecy. 18 U.S.C. § 1839.

75.     Drob acquired Better's trade secrets, including the Source Code, by improper means and without authorization, including by surreptitiously downloading Better's entire code repository to a personal drive, renaming it, and uploading it to the iCloud and away from Better's network.

76.     By his actions, Drob has used and disclosed and/or intends to use and disclose Better's trade secrets without express or implied consent.

77.     Drob knew or should have known that such information, including the Source Code: (1) is confidential; (2) was acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; (3) was developed or acquired by Better at great expense and effort; (4) was maintained as confidential and is not generally available to the public and Better's competitors; (5) would provide significant benefit to a competitor competing or seeking to compete with Better; and (6) is critical to Better's ability to conduct its business successfully.

78.     Drob has misappropriated, exploited, misused, and/or disclosed or threatened to disclose Better's trade secrets for his own self-interest and benefit, and without Better's express or implied consent.

79.     Drob will be or is being unjustly enriched by the misappropriation of Better's trade secrets and Confidential Information and, unless restrained, will continue to threaten to use, actually use, divulge, inevitably disclose, acquire and/or otherwise misappropriate Better's trade secrets and Confidential Information.

80.    As a result of Drob's wrongdoing, Better has suffered and continues to suffer the substantial and irreparable loss of its trade secrets, goodwill, and business expectancies in amounts which may be impossible to determine unless Drob is enjoined and restrained by order of the Court.

81.    In addition, Better seeks actual, incidental, compensatory, punitive and consequential damages, along with reasonable attorneys' fees and costs in an amount to be determined at trial.

### AS AND FOR A SECOND CAUSE OF ACTION
### (Breach of Contract: Non-Disclosure of Confidential Information)

82.    Better repeats and re-alleges each and every allegation contained in the preceding paragraphs of the Complaint as if fully set forth herein.

83.    On or about April 23, 2021, Drob entered into the Confidential Information Agreement with Better which explicitly prohibited him from, *inter alia*, using or divulging any of Better's Confidential Information, which includes the Source Code, other than in the performance of duties for and authorized by Better.

84.    The confidential obligations contained in the Confidential Information Agreement remain in full force and effect, and Drob, for good consideration, remains obligated to comply with those obligations.

85.    Drob breached the Confidential Information Agreement by, upon information and belief, downloading Better's Confidential Information, including the Source Code, for his own benefit and for an unauthorized purpose.

86.    Drob's actions have damaged Better's legitimate business interests, and have denied Better the benefit of its bargain in respect to the Confidential Information Agreement.

87.     As a result of Drob's breach, Better has suffered and continues to suffer irreparable injury, including loss of its confidential information, business expectancies, and damage to goodwill, for which a remedy at law is inadequate. Accordingly, Better is entitled to injunctive and equitable relief.

88.     In addition, Better seeks actual, incidental, compensatory, punitive and consequential damages, along with reasonable attorneys' fees and costs in an amount to be determined at trial.

### AS AND FOR A THIRD CAUSE OF ACTION
### (Breach of Contract: Return of Property and Confidential Information)

89.     Better repeats and re-alleges each and every allegation contained in the preceding paragraphs of the Complaint as if fully set forth herein.

90.     Pursuant to the Confidential Information Agreement, Drob agreed to return all Better property, including confidential information, upon cessation of his employment with Better.

91.     Drob breached the Confidential Information Agreement by failing to return Better's information that he retained, despite Better's demand for return of all Better's property, including the Source Code.

92.     As a direct result of Drob's breach, Better is suffering and will continue to suffer irreparable injury, including loss of business expectancies, its Confidential Information, and damage to goodwill, for which a remedy at law is inadequate. Accordingly, Better is entitled to injunctive and equitable relief.

93.     In addition, Better seeks actual, incidental, compensatory, punitive and consequential damages, along with reasonable attorneys' fees and costs in an amount to be determined at trial.

## AS AND FOR A FOURTH CAUSE OF ACTION
### (Replevin)

94.     Better repeats and re-alleges each and every allegation contained in the preceding paragraphs of the Complaint as if fully set forth herein.

95.     As explicitly stated in the Confidential Information Agreement and the Handbook, Better is entitled to possession of all of Better's property that was provided to Drob while he was employed by Better.

96.     Drob is currently in possession of Better's property, including the Source Code. Despite his duties and obligations under the Confidential Information Agreement and the Employee Handbook, Drob has not returned Better's property, including Confidential Information and the Source Code to Better.

97.     Better has demanded that Drob immediately return all of Better's property, including the Source Code, in his possession and to provide proof that all such information has been removed from his computers and has not been disseminated to any third parties.

98.     Drob lied and claimed he is not in possession of the Source Code despite evidence to the contrary.

99.     Drob has no right to possession of the Source Code.

100.    Better's Source Code in Drob's possession has not been taken for any tax, assessment or fine. Nor has the Source Code been seized under any execution or attachment against property. The Source Code is not exempt from seizure.

101.    Better needs its unique Source Code in order to maintain its competitive advantage it has developed at great time and substantial expense by Better.

102.    The value of the Source Code is conservatively estimated to be at least several million dollars.

103.     Based upon information and belief, Better's Confidential Information, including the Source Code, is located at Drob's home in Franklin Lakes, New Jersey.

104.     Better is lawfully entitled to repossess the Source Code being wrongfully detained by Drob. Better has a superior right to the Source Code and Drob does not.

105.     In addition, Better is entitled to recover its attorneys' fees and expenses it incurs as a result of Drob's theft of and refusal to return the Source Code.

**AS AND FOR A FIFTH CAUSE OF ACTION**
**(Conversion)**

106.     Better repeats and re-alleges each and every allegation contained in the preceding paragraphs of the Complaint as if fully set forth herein.

107.     Drob has intentionally and wrongfully misappropriated Better's property, including, among other things, its Confidential Information, which includes the Source Code.

108.     Drob has failed and/or refused to return this property to Better despite Better's demand and the obligations imposed by Drob's written agreements with Better.

109.     Drob's actions and wrongful detention of Better's Confidential Information, including the Source Code, has interfered with Better's dominion and control over its property, that will result in the dilution of its value.

110.     As a result of Drob's intentional and wrongful conduct, Better has been and will continue to be injured, for which it is entitled to recover actual, incidental, compensatory, punitive and consequential damages in an amount to be determined at trial.

111.     Better is further entitled to recover all monies expended to recover converted property as special damages, including attorneys' fees.

**AS AND FOR A SIXTH CAUSE OF ACTION**
**(Unjust Enrichment)**

112.     Better repeats and re-alleges each and every allegation contained in the preceding paragraphs of the Complaint as if fully set forth herein..

113.     Drob obtained Better's Confidential Information, including the Source Code, that in equity and good conscience he should not have obtained.

114.     Drob's theft of Better's Confidential Information, including the Source Code, has unjustly enriched Drob at Better's expense.

115.     As a consequence of Drob's unjust enrichment, Better has been and will continue to be injured, for which it is entitled to recover actual, incidental, compensatory, punitive and consequential damages, along with reasonable attorneys' fees and costs in an amount to be determined at trial.

**AS AND FOR A SEVENTH CAUSE OF ACTION**
**(Breach of Fiduciary Duty)**

79.     Better repeats and re-alleges each and every allegation contained in the preceding paragraphs of the Complaint as if fully set forth herein.

80.     In his capacity as Senior Software Engineer, Drob was placed in a position of trust and confidence, and was expected to devote his full time to the management and promotion of the company's business interests.

81.     As a result of this special relationship, Drob owed certain fiduciary duties to Better including a duty of loyalty and honesty, and a duty not to act in any way contrary to the interests of Better, including, but not limited to, a duty, while still employed with Better and being compensated by the Company: (a) not to misuse or misappropriate the Company's

confidential or trade secret information, (b) failing to return company property; and (c) not to be deceitful to the Company.

82.     Notwithstanding these obligations and duties, and in violation thereof, Drob breached his fiduciary duty of loyalty and honesty to Better by, among other willful acts of misconduct, (a) stealing data belonging to Better out of Better's control and into his own possession for his own personal benefit; (b) failing to return company property; and/or (c) destroying Company data on his work computer knowing it would impede the Company's investigation.

83.     As a consequence of Drob's breach of his fiduciary duty of loyalty to Better, Better has been injured and face irreparable injury.  Better is threatened with loss and misuse of its confidential and trade secret information, including the Source Code in amounts which may be impossible  to determine, unless Drob is enjoined  and restrained by order of this court.

84.     In addition, as a consequence of Drob's breach of his fiduciary duty, Better seeks actual, incidental, compensatory, punitive and consequential damages, along with reasonable attorneys' fees and costs in an amount to be determined at trial.

**WHEREFORE**, Better seeks judgment in its favor and an Order against Drob that grants the following  relief:

1.     A preliminary  injunction  and after trial, a permanent injunction that:

(a).     Preliminarily  and permanently enjoins  Drob from breaching his confidential  obligations  to Better;

(b)     Preliminarily  and permanently enjoins  Drob, and all persons and/or entities  acting on his behalf, for his benefit, or in active concert or participation  with him, from directly or indirectly  accessing, disclosing, reproducing,  or using any confidential,  proprietary and/or trade secret information  of any kind, nature or description  belonging  to Better, including  but not limited  to Source Code;

    (c)    Preliminarily and permanently enjoins Drob from obtaining employment with, providing services to, or otherwise entering into a relationship with any person or entity that competes with Better;

2.    Orders that Drob and all parties in active concert or participation with him to return to Better all originals and copies of all files, devices and/or documents that contain or relate to Better's confidential, proprietary and trade secret information, including the Source Code;

3.    Orders that Drob produce for inspection and imaging all computers and other electronic storage devices and email accounts belonging to, under the control of, accessible to, or operated by Drob;

4.    Actual, incidental, compensatory, and consequential damages in an amount to be proven at trial;

5.    Punitive damages in an amount to be proven at trial due to Drob's willful and malicious conduct;

6.    Costs and expenses incurred herein, including reasonable attorneys' fees and interest, including pursuant to 17 U.S.C. § 512(f)(2);

7.    All other relief as the Court may deem just, equitable and proper.


Dated:  New York, New York
       May 3, 2022

                    Respectfully submitted,

                    SEYFARTH SHAW LLP


                    By:___*s/ Jeremy A. Cohen*_____
                        Jeremy A. Cohen
                        James S. Yu
                    620 Eighth Avenue
                    New York, New York 10018
                    Tel.: (212) 218-5500
                    Fax: (212) 218-5526